AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| United States of America<br>v.<br>ANGEL DANIEL GONZALEZ and JESUS INZUNZA-OBESO,<br>Defendants | Case No. 2:22-mj-03867-DUTY |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of August 10, 2022 and September 27, 2022, in the county of Los Angeles in the Central District of California, the defendants violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Possession with Intent to Distribute a Controlled Substance; Conspiracy |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
Complainant's signature

LaShay Thomas, Special Agent
Printed name and title

Sworn to before me and signed in my presence.
Date: 9/29/2022

_____
Judge's signature

City and state: Los Angeles, California

Hon. Alexander McKinnon, U.S. Magistrate Judge
Printed name and title

AUSA: AMANDA ELBOGEN

**AFFIDAVIT**

I, LaShay Thomas, being duly sworn, declare and state as follows:

**PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint against Angel Daniel GONZALEZ ("GONZALEZ") and Jesus INZUNZA-OBESO ("INZUNZA-OBESO") for a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

**BACKGROUND OF SPECIAL AGENT LASHAY THOMAS**

3. I am a Special Agent ("SA") employed by the United States Drug Enforcement Administration ("DEA") assigned to Los Angeles Field Division Enforcement Group 4. I have been employed with the DEA since August 2008. I have received specialized training in narcotics trafficking and money laundering from the DEA. I have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, methods

1

used to finance drug transactions, methods of distribution, and movement of drug proceeds.

4. I am familiar with the methods of operation utilized by drug traffickers and drug trafficking organizations, including the distribution, storage, and transportation of narcotics, and the collection of monetary narcotics proceeds. I am also familiar with methods employed by large drug organizations to thwart detection by law enforcement, including the use of debit calling cards, public telephones, cellular telephone technology, mobile applications, electronic messenger/messaging systems, voice over internet phone technology, pagers, counter surveillance, encrypted devices, false, fictitious, or stolen identities, and coded communications. In conducting investigations with DEA, I have debriefed defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations and the methods in which these organizations operate. I have also participated in various aspects of these investigations, including making and directing controlled purchases of dangerous drugs, conducting physical and electronic surveillance, using informants and cooperating sources, executing search warrants, executing arrest warrants, participating in consensual searches, installing and utilizing GPS devices, and installing and utilizing electronic recording devices. I have used a variety of investigative techniques and resources, including surveillance, confidential sources, search warrants, telephone toll analysis, and wire/electronic intercept communications

analysis. Prior to my employment with the DEA, I was a Probation Officer with the Alabama Board of Pardons & Parole and the Georgia Department of Corrections-Probation Operations, where I collectively served eight years as a felony probation officer and pre-sentence investigator.

## SUMMARY OF PROBABLE CAUSE

5. On August 10, 2022, GONZALEZ sold 10,000 fentanyl pills to an individual he believed was a drug customer, but who was in fact a DEA confidential source (the "CS")[1] in a Holiday Inn Express parking lot in Santa Clarita, California.

6. On August 25, 2022, GONZALEZ and INZUNZA-OBESO sold the CS 15,000 fentanyl pills in Valencia, California.

7. On September 27, 2022, GONZALEZ and INZUNZA-OBESO met the CS, agreed to sell the CS fentanyl pills, and showed the CS approximately 71,000 suspected fentanyl pills in their car. Shortly after that meeting, police officers conducted a traffic

---

[1] The CS is a Mexican national and the former leader of a Los Angeles-based cell of the Sinaloan drug cartel. S/he began working with the DEA in 2013, after s/he was convicted of possession of marijuana for sale and illegal re-entry into the United States following deportation or removal. From 2019 through early 2022, the CS also acted as a confidential source with Homeland Security Investigations. The CS is working with the DEA in exchange for monetary compensation, permission to enter and remain in the United States, and deferred action on his/her immigration consequences for the above-mentioned conviction. The CS's criminal history includes only the aforementioned convictions for possession of marijuana for sale and illegal re-entry into the United States following deportation or removal. To date, the CS has been paid approximately $830,908 for information s/he provided to DEA investigators. Since 2013 s/he has assisted in investigations resulting in the seizure of approximately thousands of pounds of narcotics and millions of dollars.

stop of GONZALEZ and INZUNZA-OBESO's car. Inside the car, officers found a cardboard box in the trunk containing seven individually wrapped packages containing suspected fentanyl pills.

## STATEMENT OF PROBABLE CAUSE

8. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A. August 2022: GONZALEZ and INZUNZA-OBSEO Sold Fentanyl Pills to the CS

9. On August 3, 2022, the CS had a recorded telephone call with a narcotics broker operating in Mexico who goes by "Bebe" and/or "El Nino". The CS gave the broker his/her cell phone number, and the broker informed the CS to expect a call from GONZALEZ.

10. Later that day, the CS received a telephone call on a recorded line from a male later identified as GONZALEZ, who was using 323-547-6353 (the "6353 Number"). A subsequent law-enforcement database search revealed that the 6353 Number had been provided as contact information in several money-wiring transactions by an individual using a driver's license with the name Angel Daniel GONZALEZ. During the recorded telephone conversation, GONZALEZ told the CS that "he is calling on behalf of El Nino to provide perfumes". Based on my knowledge and experience, "perfumes" is coded language for pills. Coded language is often used to disguise conversations concerning narcotics in order to mislead law enforcement. GONZALEZ

4

informed the CS of a general area where he was located and also confirmed with the CS the price at which he would sell fentanyl: 45 cents per pill in exchange for 10,000 fentanyl pills. GONZALEZ then sent a text message to the CS indicating a meeting location to conduct the narcotics transaction: 5621 Outlets at Tejon Parkway Arvin, CA 93203.

11. On August 5, 2022, GONZALEZ used the 6353 Number to have another recorded telephone call with the CS. GONZALEZ verified the amount of 10,000 fentanyl pills for the deal and the date they were needed by, which was August 10, 2022. GONZALEZ informed the CS that his supply of fentanyl pills was in high demand and would not last long. GONZALEZ assured the CS that he would be arriving to their meeting alone.

12. On August 8, 2022, GONZALEZ used the 6353 Number to have another recorded telephone call with the CS. Both parties agreed to meet on Wednesday, August 10, 2022 at approximately 7:00 p.m. in Santa Clarita, California to conduct the transaction.

13. On August 10, 2022, the CS called GONZALEZ on a recorded telephone call, and reconfirmed the details to meet later that day. GONZALEZ requested an address in Santa Clarita to meet, and the CS texted the following address: Holiday Inn Express 27501 Wayne Mills Place Valencia, CA 91355. Based on my training and experience, I know that it is customary for the CS to provide his/her own location for the transaction for safety reasons.

14. At or around 7:00 p.m. on August 10, 2022, officers conducting surveillance observed a black BMW bearing California license plate 8RSX533 arrive at the Holiday Inn Express parking lot. The vehicle was occupied with two individuals inside: GONZALEZ and an unknown male who was driving. Surveillance officers observed GONZALEZ take a Tostitos chip bag and hand it to the CS. The CS, who was wearing an audio-video recording device, placed the Tostitos chip in bag in the trunk of his/her vehicle. During the narcotics transaction, GONZALEZ stated to the CS that the fentanyl pills were in the same packaging he received them in. GONZALEZ also told the CS that he could have an additional 3,000 fentanyl pills available for purchase within 48 hours.

15. After both parties concluded the meeting, GONZALEZ departed the parking lot and headed north on the Interstate 5 freeway. After the narcotics transaction took place, the CS was escorted by surveillance officers to a neutral location and was debriefed concerning the encounter that took place with GONZALEZ. The pills that were contained in the Tostitos chip bag were transported to the DEA Southwest Lab for analysis, and lab results confirmed that the bag contained approximately 10,000 pills, and that the pills tested positive for fentanyl.

16. On August 19, 2022, the CS placed a recorded telephone call to GONZALEZ and said that the CS was interested in purchasing 15,000 fentanyl pills. GONZALEZ stated that he would have them ready when they meet in Santa Clarita. GONZALEZ

reemphasized to the CS that the way the fentanyl pills are given to him is the way they will be given to the CS.

17. On August 23, 2022, the CS placed a recorded telephone call to GONZALEZ, requested that they meet on Thursday, August 25, 2022, to conduct the transaction for 15,000 fentanyl pills, and asked if the pills were ready. GONZALEZ responded they could meet on August 25 either in the morning around 8am or in the evening at 7pm or 8pm.

18. On August 24, 2022, GONZALEZ called the CS on a recorded line. On that call, GONZALEZ reconfirmed his agreement to meet the CS to sell 15,000 fentanyl pills in exchange for $6,750. Later on that same date, GONZALEZ called the CS again, and the call was recorded. On that call, GONZALEZ informed the CS that GONZALEZ would give the CS a few more pills if the CS would give him $200-$250 for gas money. GONZALEZ told the CS that the pills would come the same as they had before.

19. On August 25, 2022, the CS placed a recorded telephone call to GONZALEZ and notified him that he/she would arrive in approximately 45 minutes. Following the phone call, the CS sent an outgoing text message to GONZALEZ containing the address 26818 The Old Road, Valencia, CA.

20. A few moments later, surveillance observed GONZALEZ driving a black BMW bearing license plate 8RSX533 (the same BMW from the transaction on August 10, 2022) arrive in the parking lot along with a passenger. Upon the vehicle parking, a Hispanic male (later identified as INZUNZA-OBESO) exited the passenger side of the BMW. The CS, wearing an audio-video

recording device, exited his/her vehicle as well, and began speaking with INZUNZA-OBESO in the parking lot. The CS asked INZUNZA-OBESO: "Do I give it to you? Count it". INZUNZA-OBESO replied: "I have it right here, that's fine," as he removed a red 5-Star binder from his vehicle. The CS then informed INZUNZA-OBESO that next time he/she would order 100,000 pills. INZUNZA-OBESO asked the CS to let him know in advance, and stated that he had paid for the drugs and wanted to recuperate what was spent already. The CS told INUNZA-OBESO that he/she would reach out later regarding the 100,000 fentanyl pill purchase. INZUNZA-OBESO told the CS to just let him know. INZUNZA-OBESO then placed the red 5-Star Binder on the rear driver side floorboard of the CS's vehicle. Then the CS gave INZUNZA-OBESO $6,750 in cash. Afterwards, the CS and INZUNZA-OBESO concluded their meeting and departed the parking lot.

21. Surveillance observed the BMW stop at a gas station and then head north on Interstate 5. Law enforcement officers escorted the CS to a neutral location to debrief the encounter and retrieve the red 5-Star Binder that IZUNZA-OBESO had placed in his car. Inside the binder, law enforcement officers found a large quantity of pills.

22. DEA agents sent the pills to the DEA Southwest Lab for analysis, and lab results confirmed the binder contained approximately 15,000 pills, and the pills tested positive for fentanyl.

**B. September 28 2022: GONZALEZ and INZUNZA-OBSEO Possessed Suspected Fentanyl Pills to Sell to the CS**

23. On September 12, 2022, the CS placed a recorded telephone call to GONZALEZ on a recorded line and asked if he/she could grab 100,000-110,000 pills for the following week. GONZALEZ replied "everything is good".

24. On September 21, 2022, the CS again placed a recorded telephone call to GONZALEZ and told him that he/she had the money to buy 110,000 fentanyl pills.

25. On September 26, 2022, the CS placed a recorded telephone call to GONZALEZ and set up a meeting for the following day in Santa Clarita, CA. GONZALEZ informed the CS he would find out how many pills he could provide and let the CS know.

26. Later that day, GONZALEZ called the CS on a recorded line and notified the CS that it would be approximately 70,000-80,000 fentanyl pills as opposed to the previously agreed upon amount of 110,000.

27. On the morning of September 27, 2022, the CS placed a recorded call to GONZALEZ and told him he/she would meet him at 7:30 p.m. in Santa Clarita. Later that evening, the CS texted GONZALEZ with a location to meet: 26818 The Old Road, Valencia CA 91381. At approximately 7:00 p.m., DEA SA Carlos Duran met the CS in the parking lot of a Super Clips Haircut salon located at 26818 The Old Road Valencia, CA 91381. SA Duran searched the CS for contraband on his/her person and in his/her vehicle with negative results. The CS was also equipped with an audio/visual

transmitter to record the events that would take place during the narcotics transaction.

28. Law-enforcement officers conducted surveillance in and around the parking lot of the Super Clips hair salon. Additionally, law-enforcement officers maintained constant surveillance on the CS after he/she was searched by agents. Upon arrival to the Super Clips hair salon parking lot, the CS texted GONZALEZ to provide the address where they would meet.

29. At approximately 8:00 p.m., law-enforcement officers conducting surveillance observed the CS exit the CS's vehicle as he/she guided in a black BMW 4-door sedan, bearing CA license plate 8RSX533 (the same BMW from the two previous transactions). Law-enforcement officers observed two occupants inside the vehicle drive around the lot to the CS and park adjacent to the CS vehicle. After parking, the agents observed GONZALEZ and INZUNZA-OBESO exit the BMW and begin conversing with the CS. INZUNZA-OBESO handed a small clear baggie to the CS. The CS requested to see the 70,000 fentanyl pills. INZUNZA-OBESO and GONZALEZ opened the trunk of their vehicle. Surveillance then observed the CS look inside the trunk at a cardboard box.

30. GONZALEZ, INZUNZA-OBESO, and the CS conversed briefly. The CS told INZUNZA-OBESO and GONZALEZ that he/she had to count out the money for the 70,000 fentanyl pills. The CS instructed GONZALEZ and INZUNZA-OBESO to follow the CS vehicle to a different location so he/she could pay them. Then, all parties entered their respective vehicles traveling in tandem with the CS.

31. The CS then called SA Duran and confirmed that the CS had seen a large quantity of suspected fentanyl pills in the trunk of the BMW. At the direction of law enforcement, upon exiting the parking lot, the CS made a right turn onto a street called The Old Road, traveling north. As the BMW was traveling north on The Old Road following the CS, officers in a marked California Highway Patrol vehicle conducted a traffic stop.

32. According to the officers who conducted the traffic stop, during the course of the traffic stop, officers requested and obtained identification from GONZALEZ and INZUNZA-OBESO, then ordered them to exit the BMW. The officers then searched the BMW, and located a brown cardboard box in the trunk that contained seven individually wrapped packages inside containing suspected fentanyl pills. The officers arrested GONZALEZ and INZUNZA-OBESO.

**CONCLUSION**

33. For all of the reasons described above, there is probable cause to believe that Angel Daniel GONZALEZ and Jesus INZUNZA-OBESO have committed a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

Attested to by the applicant in person ~~accordance with the requirements of Fed. R. Crim. P. 4.1 by~~ telephone on this 29th day of September, 2022.

*[signature]*

UNITED STATES MAGISTRATE JUDGE